**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PRESTIGE CAPITAL CORPORATION,

*Plaintiff*

v.

PIPELINERS OF PUERTO RICO, INC.; PUERTO RICO AQUEDUCT AND SEWER AUTHORITY; AND ECONOMIC DEVELOPMENT BANK FOR PUERTO RICO,

*Defendants*.

CIV. NO. 10-2155 (PG)

**OPINION AND ORDER**

This ongoing dispute between secured creditors Prestige Capital Corporation ("Prestige") and the Economic Development Bank for Puerto Rico ("EDB"), has given rise to a new conflict, this time between EDB and debtor Pipeliners of Puerto Rico ("Pipeliners"). Pipeliners has brought a Crossclaim against EDB under this Court's supplemental jurisdiction, asserting breach of contract and tortious interference with contractual obligations claims, relating to a loan agreement perfected between the two on July 22, 2010. Docket No. 30. EDB seeks dismissal of said Crossclaim arguing that Pipeliners is precluded from bringing suit in this Court under the agreement's forum selection clause, and in the alternative, that this Court lacks supplemental jurisdiction to entertain the claim. Docket No. 60. Pipeliners has filed its opposition. Docket No. 71. Because this Court finds that the forum selection clause at issue is permissive, and that it has supplemental jurisdiction to entertain the claims, it must **DENY** EDB's request for dismissal.

## I. BACKGROUND

The Court will recount only the relevant facts surrounding the EDB-Pipeliners dispute. For a more detailed background on the whole of this case, please see our prior Opinion and Order dated October 14, 2011. Docket No. 81.

Pipeliners is a Puerto Rico corporation engaged in the business of repairing and rehabilitating aqueduct and sanitary lines using principally trenchless methods, and has entered into multiple contracts with the Puerto Rico Aqueduct and Sewer Authority ("PRASA"). On June 9,

2005 Prestige and Pipeliners entered into a Purchase and Sale Agreement (the "P&S Agreement") and an amendment thereto on November 7, 2006. Docket No. 1-A. Pursuant to the P&S Agreement, Pipeliners agreed to sell, and Prestige agreed to purchase, from time to time, certain accounts receivables and contract rights of Pipeliners. Pursuant to Section 11 of the P&S Agreement, Pipeliners granted Prestige a continuing security interest in all of its accounts receivables, among other assets, as security for the payment of any unpaid invoices. Prestige duly perfected its security interest on June 16, 2005 by filing the appropriate financing statements with the Puerto Rico Department of State.

Five years later, on July 22, 2010, Pipeliners and EDB executed a Loan Agreement pursuant to which EDB granted Pipeliners a revolving line of credit in the amount of $2,000,000 (the "Loan Agreement"). Pipeliners also granted EDB a continuing security interest in the same accounts receivables encumbered by Prestige's earlier security interest. EDB perfected its security interest on July 28, 2010, by filing a financing statement with the Puerto Rico Department of State.

On August 19, 2010, counsel for Prestige sent a letter to the attorney and public notary who drafted and executed the closing documents for the EDB Loan Agreement. In it, Prestige alleged that it held a senior security interest encumbering the same collateral as EDB's security interest and demanded that EDB turn over any proceeds deriving from said collateral. Docket No. 1-C. Two months later, on October 21, 2010, EDB sent a letter to Pipeliners indicating that it had defaulted on the terms of the Loan Agreement by not disclosing the alleged liens held by Prestige. Docket No. 8-4. This purported failure to disclose effectively triggered an acceleration clause in the EDB Loan Agreement, rendering the EDB Loan immediately due and payable. Id.

These actions by EDB triggered the filing of Pipeliners' Crossclaim in the instant action, where Pipeliners makes the following allegations:

> During the negotiations by and between Pipeliners and EDB, Pipeliners informed EDB personnel of the existence of the P&S Agreement by and between Pipeliners and Prestige as well as of the fact that Pipeliners' accounts receivables served as collateral to said Agreement. Indeed, Pipeliners understood throughout its negotiations with the EDB that a substantial portion of the proceeds

of the EDB Loan would be precisely used to repay the amounts owed by Pipeliners to Prestige, in order for EDB to obtain a senior lien over such accounts. Crossclaim, ¶ 6.

Pursuant to requests made by Pipeliners, between July and September 2010, EDB made certain disbursements under the Loan Agreement totaling approximately $375,000.00. Crossclaim, ¶ 8.

However, on October 14, 2010, the EDB sent a letter to Pipeliners whereby the EDB unilaterally terminated the Loan Agreement. As grounds for this termination, the EDB stated that subsequent to the execution of the Loan Agreement, the bank became aware that Prestige had a senior security interest over Pipeliners' accounts receivables from PRASA, and that this information had been somehow withheld by Pipeliners during the negotiations of the Loan Agreement. Crossclaim, ¶ 9.

On November 14, 2010, Pipeliners answered the EDB letter and clarified that the EDB was fully aware at all times of the Prestige security interest because Pipeliners had so informed it all throughout the negotiations with EDB and, beyond said applicable disclosures, EDB had to be aware of the situation being Prestige's security interest a matter of public record easily noticeable when EDB filed its own financing statement before the Puerto Rico State Department. At that time, Pipeliners requested that EDB refrain from terminating the Loan Agreement and that the same be allowed to continue according to its terms. Crossclaim, ¶ 10.

Nonetheless, the EDB continued to insist on the termination of the Loan Agreement and subsequent conversations between all parties involved failed to lead to any sort of understanding that could somehow provide a solution. Crossclaim, ¶ 11.

As a result of the foregoing: (i) the EDB refused and continues to reject to acknowledge that Prestige has a senior lien over Pipeliners' accounts receivables from PRASA; (ii) the EDB failed to fully deliver on its Loan Agreement with Pipeliners; and, (iii) the EDB has demanded immediate payment of the funds advanced under the Loan Agreement. Crossclaim, ¶ 12.

Furthermore, the EDB has interfered with the contracts existing by and between Pipeliners and PRASA, by demanding and obtaining from PRASA the payment directly to EDB of certain amounts owed by PRASA to Pipeliners, which in turn are owed by Pipeliners to Prestige. Moreover, the EDB has further interfered in the contractual relationship Pipeliners has with PRASA by demanding and causing undue

delays in the PRASA process of payments to Pipeliners and/or Prestige. Crossclaim, ¶ 13.

As a result of the foregoing, Pipeliners requests this Court order EDB to effect specific performance of its obligations under the Loan Agreement, as well as to indemnify Pipeliners in damages resulting from the alleged breach of contract and the tortious interference with its contractual obligations to third parties, including Prestige. EDB contends these claims should be dismissed, because under the Loan Agreement's forum selection clause, said claims could only have been brought before the state court sitting in San Juan, Puerto Rico. EDB also moves for dismissal of the claims on the grounds of lack of subject matter jurisdiction under 28 U.S.C. §1367.

## II. DISCUSSION

### A. The Forum Selection Clause

EDB's first argument is that the Loan Agreement's forum selection clause precludes Pipeliners from asserting its claims in this forum. The Court will address this argument below after outlining the applicable standard of review.

i. *Standard of Review*

In our circuit, motions to dismiss based on a forum selection clause are treated as a motion alleging a failure to state a claim upon which relief can be granted under Rule 12(b)(6). Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 (1st Cir. 2001). In these cases, the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). Further, under the Rule 12(b)(6) standard the Court may only consider facts and documents that are part of or incorporated into the complaint; if documents outside of the pleadings are considered, the motion should be adjudicated under the more stringent standards of a Rule 56 motion for summary judgment. Id.; Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008). The First Circuit has carved out

several exceptions to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera, 575 F.3d at 15. These may be properly considered on a Rule 12(b)(6) motion.

In this case, the parties have not raised any controversy regarding the authenticity of the Loan Agreement where the forum selection clause at issue is contained. The Crossclaim filed by Pipeliners is mostly concerned with the enforcement of said Loan Agreement. Consequently, although Pipeliners did not include a copy of the Loan Agreement in its Crossclaim, the Court may still consider said motion under the standards of Fed. R. Civ. P. 12(b)(6) because the Loan Agreement is central to Pipeliners' claim. Thus, it is not necessary to convert EDB's motion to dismiss into a motion for summary judgment.

ii. *Analysis*

The forum selection clause in the Loan Agreement states the following:

> For the purposes of legal actions, the DEBTOR agrees to submit to the jurisdiction and competence of the Puerto Rico San Juan Superior Court.

Docket No. 53-1, at 8 (emphasis in original). Although the original suit filed by Prestige in this case against all defendants is one that is premised on this Court's diversity jurisdiction, it is unnecessary to reach the unsettled issue of whether forum selection clauses such as this one are to be treated as procedural or substantive under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). For present purposes, the Court may apply federal common law as it is well settled that "there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses." Rivera, 575 F.3d at 16-17; Silva, 239 F.3d at 387, n.1.

Under federal law, the Court's first line of inquiry is to determine whether the forum selection clause at issue is permissive or mandatory. Permissive forum selection clauses are often described as "consent to jurisdiction clauses" because they merely authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere. Rivera, 575 F.3d at 17 (citing 14D Charles Alan

Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)). Conversely, a mandatory forum selection clause contains "clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Id. EDB argues that the forum selection clause in the agreement is mandatory, and requests the Court dismiss Pipeliners' Crossclaim as the same could only have been brought before the San Juan Superior Court. Pipeliners, on the other hand, insists that the clause is permissive, as it merely reflects that Pipeliners assented to jurisdiction in the San Juan court, not that it waived its rights to pursue litigation elsewhere. Based on the case law recounted below, the Court is forced to agree with Pipeliners.

In Redondo Constr. Corp. v. Banco Exterior de España, S.A., 11 F.3d 3 (1st Cir. 1993), the First Circuit considered a forum selection clause which provided that "Borrower and the Guarantors each hereby expressly submits to the jurisdiction of all Federal and State courts located in the State of Florida." Id. at 5. The court determined that such language evinced a permissive forum selection clause, reasoning that "[a]ffirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction." Id. at 6.

In another case, Autoridad de Energía Eléctrica de Puerto Rico v. Ericsson, Inc., 201 F.3d 15 (1st Cir. 2000), the First Circuit analyzed a similar clause which stated: "This contract will be governed and interpreted pursuant to the Laws of the Commonwealth of Puerto Rico and the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico." Id. at 18. The contract at issue there was entered into by plaintiff Puerto Rico Electric Power Authority (PREPA) and defendant Ericsson, Inc., an entity incorporated and having its principal place of business outside of Puerto Rico. Like in Redondo, the First Circuit held that the forum selection clause at issue was permissive, as it merely conferred jurisdiction upon the state courts of Puerto Rico. The court gave special weight to the fact that Ericsson was a foreign corporation, and that it made sense that PREPA, as the drafter of the contract and the eventual plaintiff, would want to require Ericsson to consent to the jurisdiction of the Puerto Rico state courts in the event of any dispute. This way, Ericsson would be precluded from asserting a lack of *in personam* jurisdiction defense in the Puerto Rico

courts, and PREPA would be able to avoid the expense of having to overcome such a defense.

However, in Rivera v. Centro Médico de Turabo, Inc., supra, the First Circuit had the opportunity of assessing a somewhat different forum selection clause contained in a medical consent form. There, the clause at issue stated that:

> In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me, I expressly agree to submit to the Jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico, for any possible claim.

Id. at 14. The court noted that although the clause shared the "agree to submit" language with the other clauses present in Redondo and Ericsson, said language was preceded and informed by a qualifying phrase: "In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me…" This introductory phrase, the court reasoned, rendered the forum selection clause mandatory, thereby requiring the plaintiff-patient in that case to assert any legal action he may have against the defendant in the Puerto Rico courts. The court differentiated this from the clauses in Redondo and Ericsson, where the signatories "consented to the exercise of jurisdiction over themselves as *defendants* in order to avoid the personal jurisdiction analysis that would otherwise be required for out-of-state defendants." Id. at 18. The court held that this difference in context was determinative, and classified the clause as mandatory, even though it lacked typical mandatory terms such as "shall," "exclusive," "only," or "must." Id. at n.5.

Based on the above case law, this Court believes that the forum selection clause in the case at bar is more reminiscent to the ones present in Redondo and Ericsson than to the one in Rivera. For starters, the clause contains the same kind of phrase which has been held by the First Circuit in the former cases to constitute a permissive forum selection clause, namely: "the DEBTOR agrees to submit to the jurisdiction and competence of the Puerto Rico San Juan Superior Court." Although this language is preceded by the phrase "For the purposes of legal actions…," said phrase does not sufficiently affect the meaning of the clause to render it mandatory and preclude Pipeliners from pursuing its claims in this forum. The clause lacks typical mandatory terms such

as "shall," "will," "exclusively," "only," or "must," which generally evince an intent by the parties to limit the appropriate forum for all claims arising under the agreement to a particular court. Although in Rivera the First Circuit held that such terms are not necessary to denote a mandatory clause, the clause at issue there was bookended with the phrase "for any possible claim." Moreover, said clause was also preceded by a wordy qualifying phrase that strongly suggested that its drafters intended it to have a mandatory effect. Here, the forum selection clause is ambiguous at best, and given the fact that the parties could have easily drafted a clearer clause by inserting typical mandatory terms and phrases, the Court finds that in the interest of fairness the clause must be read as permissive. See Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2nd Cir. 2011) (stating that forum selection clauses lacking any clear exclusionary or obligatory language, that is, specific language of exclusion, are permissive and not subject to a presumption of enforceability).

Even though in this case neither of the parties to the Loan Agreement is a foreign corporation—which obviates the need for a tribunal to enter into an *in personam* jurisdiction analysis—reading the clause to be permissive does not render it superfluous. This, as the clause states that Pipeliners "agrees to submit to the jurisdiction and competence" of the San Juan Superior Court. (our emphasis). Although the Court concedes that Pipeliners would be subject to said court's personal jurisdiction as a matter of course, it is conceivable that EDB supported including the clause to avoid having to litigate claims against Pipeliners in other Puerto Rico courts outside of San Juan. For example, EDB may have preferred to preclude Pipeliners from raising a defense of improper venue had EDB chosen to pursue legal action against Pipeliners in the San Juan Superior Court. Such reasoning supports reading the clause as permissive, and thus the Court concludes that Pipeliners properly filed its Crossclaim in this forum.

The Court will now saunter over to the next issue: whether there exists supplemental jurisdiction to entertain Pipeliners' Crossclaim.

**B. Supplemental Jurisdiction**

EDB's second argument is that this Court lacks supplemental

jurisdiction under 28 U.S.C. §1367 to entertain Pipeliners' Crossclaim, as the same is not ancillary to Prestige's claims. For the reasons set forth below, this argument also fails.

i. *Standard of Review*

Federal Rule of Civil Procedure 12(b)(1) states that a party may seek dismissal of an action for lack of subject matter jurisdiction. Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Valentín v. Hosp. Bella Vista, 254 F.3d 358, 362–363 (1st Cir. 2001). Nevertheless, motions to dismiss brought under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negrón–Gaztambide v. Hernández–Torres, 35 F.3d 25, 27 (1st Cir. 1994). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. U.S., 620 F.3d 50, 54 (1st Cir. 2010) (citing Hosp. Bella Vista, 254 F.3d at 363). If it appears to the court at any time that it lacks jurisdiction over the subject matter, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case. Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

ii. *Analysis*

It is a rudimentary principle that "federal courts are courts of limited jurisdiction." Picciotto v. Continental Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (internal quotations omitted). However, many cases that are properly within a federal court's jurisdiction include issues or claims against parties that would otherwise not meet the requirements for federal jurisdiction on their own. Erwin Chemerinsky, Federal Jurisdiction, §5.4, p. 340 (2007 5th Ed). The Supplemental Jurisdiction statute adopted in 1990 provides a grant of subject matter jurisdiction for federal courts to be able to hear these types of claims:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction,

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. §1367(a). The issue, then, is whether Pipeliners' Crossclaim, which seeks enforcement of the Loan Agreement with EDB, is "so related" to Prestige's original claims against all defendants that both form part of the same case or controversy for Article III purposes. The question is not whether Pipeliners' claims against EDB arise out of the same transaction or occurrence as Prestige's claims. See Godin v. Schencks, 629 F.3d 79 (1st Cir. 2010)( "No Supreme Court case had ever established the same transaction-or-occurrence test as the boundary of Article III case-or-controversy requirement") (citing Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 88 (1st Cir. 2010)).

The Court concludes that Pipeliners' claims arising from the alleged breach of the Loan Agreement are sufficiently related to Prestige's own claims against all defendants. Prestige's original complaint does not merely boil down to a simple breach of contract claim against Pipeliners. Rather, Prestige included claims against not only Pipeliners, but EDB and PRASA as well, and specifically mentioned the Loan Agreement between EDB and Pipeliners in its complaint. Furthermore, Prestige's complaint and Pipeliners' Crossclaim share many of the same allegations. For instance, both claim that EDB unilaterally terminated the Loan Agreement between it and Pipeliners and rendered Pipeliners' loan immediately due and payable. In addition, both pleadings state that EDB refuses to acknowledge that Prestige has a senior lien over Pipeliners' account receivables and that EDB continues to interfere with PRASA's payment processes, thereby hampering Pipeliners' ability to obtain payment for its services. This, in turn, has hindered Pipeliners' ability to pay Prestige for the monies disbursed to it under the P&S Agreement. Therefore, it is apparent that Prestige has a vested interest in the successful vindication of Pipeliners' claims against EDB, making these claims sufficiently related to those of Prestige to form part of the same case or controversy under the Constitution.

On a last note, EDB reminds the Court that there is an interpleader

action filed by PRASA in the state court against Pipeliners, EDB and Prestige, where EDB has filed a Crossclaim against Pipeliners. Hence, EDB claims that the local court has already asserted jurisdiction over all issues concerning the Loan Agreement's enforcement and that efficiency and convenience concerns warrant dismissing Pipeliners' Crossclaim so as to avoid piecemeal litigation. This argument, though, is mistaken. First off, there is no indication that Pipeliners has advanced the same claims contained in its Crossclaim here in the interpleader action pending before the state court. Therefore, it appears to the Court that Pipeliners only wishes to have its claims adjudicated in this forum and there is no parallel litigation in the true sense of the phrase. Second, even if there were parallel actions, the First Circuit has held that a court may only consider surrendering federal jurisdiction if "the implications and practical effects of litigating the parallel actions provide an exceptional basis" for doing so, "such as a clear competing policy or special complication." Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 116 (1st Cir. 2012)(emphasis in original).[1] Here, the Court is not aware of any competing policy or special complication; neither does it deem it appropriate to decline exercising supplemental jurisdiction under 28 U.S.C. §1367(c). Despite EDB's manifestations to the contrary, the Court does not believe that Pipeliners' breach of contract Crossclaim poses any complex issues that will unduly delay the proceedings or thwart the just resolution of the original complaint filed by Prestige. In fact, the Court is of the opinion that exercising supplemental jurisdiction in this case will further the goals of judicial economy and foster a prompt resolution of all the claims present in this case.

Having so determined, the Court holds that Pipeliners' claims are properly within its subject matter jurisdiction and the same must be allowed to proceed in due course.

---

[1] In Nazario, the First Circuit was before a motion to dismiss seeking the District Court abstain from exercising federal jurisdiction under Colorado River v. United States, 424 U.S. 800 (1976), due to parallel litigation pending in the Puerto Rico state courts. The court there weighed the "piecemeal litigation factor" among others and determined that the District Court abused its discretion in dismissing the case.

## III. CONCLUSION

For the reasons elucidated above, co-defendant EDB's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, March 29, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**