**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PRESTIGE CAPITAL CORPORATION,

   *Plaintiff,*

     v.

PIPELINERS OF PUERTO RICO, INC.;
PUERTO RICO AQUEDUCT AND SEWER
AUTHORITY; AND ECONOMIC
DEVELOPMENT BANK FOR PUERTO RICO,

   *Defendants.*

CIV. NO. 10-2155 (PG)

**OPINION AND ORDER**

**I. Background**

In its prior Opinion and Order dated October 14, 2011 (hereinafter the "Opinion") the Court issued a declaratory judgment stating that Plaintiff Prestige Capital Corporation ("Prestige") held a senior security interest to that of the Economic Development Bank ("EDB") over co-defendant Pipeliners of Puerto Rico's ("Pipeliners") non-bonded invoices, including invoices held against the Puerto Rico Aqueduct and Sewer Authority ("PRASA"). See Docket No. 81. The Court also ordered the EDB to "turn over any proceeds it has received from the Pipeliners collateral to Prestige until its claims are satisfied in full." Id. at 19. The EDB has now filed a motion to alter judgment, seeking the Court reconsider said pronouncements. See Docket No. 86. PRASA also seeks joinder to that motion and requests reconsideration of the Court's rulings on its own grounds. See Docket No. 87. Prestige has opposed the EDB's motion (Docket No. 95) and has requested the Court strike PRASA's motion for joinder and reconsideration (Docket No. 89). PRASA opposed said request. (Docket No. 92). For the reasons that follow, the Court hereby **DENIES** EDB's motion for reconsideration and **GRANTS** Prestige's request to **STRIKE** PRASA's motions for joinder and reconsideration.

**II. Discussion**

  **A. EDB's Motion to Alter Judgment**

    **i. Standard of Review**

Rule 59(e) of the Federal Rules of Civil Procedure preserves the district court's right to alter or amend a judgment after it is issued.

Fed. R. Civ. P. 59(e). Motions to alter or amend an order or a judgment are appropriate where they involve reconsideration of matters properly encompassed in the decision on the merits. See White v. New Hampshire Department of Employment, 455 U.S. 445, 451 (1982). The case law acknowledges the following four grounds that justify altering or amending an order or a judgment: (1) to incorporate an intervening change in law; (2) to reflect new evidence not available at the time of trial; (3) to correct a clear legal error; and (4) to prevent a manifest injustice. See Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607 (1st Cir. 2000); Zimmerman v. City of Oakland, 255 F.3d 734 (9th Cir. 2001); and Servants of Paraclete v. Does, 204 F.3d 1005 (10th Cir. 2000). Thus, for example, a Rule 59(e) motion is "appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Id. at 1012; See also Continental Casualty Co. v. Howard, 775 F.2d 876 (7th Cir. 1985), cert. denied, 475 U.S. 1122 (1986).

### ii. Discussion

Under the Purchase and Sale agreement ("P&S Agreement"), Prestige promised to purchase several PRASA account receivables from Pipeliners. The EDB argues that inasmuch as this transaction failed to comply with the requirements of the Puerto Rico Assignment of Claims Act ("PRAOCA"), it is null and void and so is the collateral guarantee that secures it, namely the security interest over the PRASA account receivables. Prestige counters that as the Court already rejected this argument in its Opinion, the EDB is precluded from raising it again via a motion to alter judgment. The Court agrees and reiterates that the circumstances of this case do not warrant invalidating the P&S Agreement under the PRAOCA.

The Court reminds the EDB that its argument has also been rejected in similar circumstances by the case law cited in the Opinion. As the parties did not offer any Puerto Rico case law on point,[1] the Court was forced to rely on federal case law interpreting an analogous federal statute: the Frauds Act. Said case law emphasized that the Frauds Act "'must be interpreted in the light of its purpose to give protection to the Government' so that between the parties effect might still be given to an assignment that failed to comply with the statute". Docket No. 81 at 10 (citing Martin v. National Surety Co., 300 U.S. 588, 596 (1937). In

---

[1] Nor was the Court able to find any on its own.

essence, the Frauds Act should no longer apply when the assignor has completed collection of its claims and the Government's liability has ended. The Court believes this is the case here. As it understands the record, under the P&S Agreement Prestige did not seek payment of the PRASA account invoices directly from PRASA.[2] Rather it was Pipeliners who would first collect the payments from PRASA and then forward them directly to Prestige. See e.g., Pipeliners Answer to the Complaint, Docket No. 29, ¶ 14. Therefore, under this scenario the Court is unwilling to invalidate the P&S Agreement entered into between Prestige and Pipeliners.

The EDB's alternative argument is that the Court should alter its mandate ordering it to turn over any proceeds it received from the Pipeliners collateral to Prestige until Prestige's claims have been satisfied in full. It maintains that the order to turn over should only encompass proceeds received after Prestige served a notice of default upon Pipeliners and notified the same to PRASA and EDB. Otherwise, the EDB argues, the Order would cover proceeds that are not subject to be turned over to Prestige under the Puerto Rico Commercial Transactions Act ("UCC-PR"). Prestige retorts that the EDB is not entitled to keep these proceeds because the EDB acted in bad faith in procuring and keeping them, as Prestige repeatedly warned the EDB that it held a senior security interest over the same. The Court agrees with Prestige and finds that there is no dispute as to the fact that on August 19, 2011 Prestige put the EDB on notice of its perfected first priority lien over the PRASA account receivables. Subsequently, the EDB served its notice of default upon Pipeliners on October 21, 2010 and began its efforts to foreclose on the PRASA account receivables. Thus the Court concludes that its order to turn over should apply from this latter date forward.

**B. PRASA's Motion for Joinder and Reconsideration**

PRASA has also filed a motion seeking the Court reconsider its holding declaring Prestige to be the senior secured creditor of Pipeliners. In its motion, PRASA requests joinder to the EDB's motion to alter judgment and argues that the Court should have instead declared that the EDB is the senior secured creditor of Pipeliners. It argues that

---

[2] At least not until Pipeliners defaulted under the terms of the P&S Agreement.

the Court's Opinion and Order "put an undue and unwelcomed amount of pressure and responsibility on PRASA to secure correction of each payment made [to its contractors], defeating the purpose for which the PRAOCA was legislated." Docket No. 87 at 4. PRASA further argues that the Opinion set a precedent that on future occasions "will put the undue responsibility on PRASA [and other agencies] of having to verify the correctness of an assertion from a third party claiming a lien over a supplier's account receivables, not notified according to PRAOCA, at the Department of State." Id. at 5-6. Prestige, on its part, argues that PRASA's motion should be stricken as PRASA failed to raise these arguments during the extensive briefing period afforded by the Court for the cross motions for summary judgment. Docket No. 89. PRASA opposes said request, arguing that it could not have foreseen that the Court's Opinion would have been so detrimental to its interests. Docket No. 92. The Court is unconvinced and finds that PRASA should have made its arguments sooner; therefore, it agrees with Prestige that its motion to alter judgment should be stricken from the record. Moreover, the Court believes PRASA has completely misconstrued the Opinion and its effect on future controversies.

    First off, the cross motions for summary judgment and their related filings extensively discussed the PRAOCA and the effect it may have on the validity of Prestige and EDB's overlapping security interests. PRASA was on adequate notice that Prestige was seeking a determination from this Court that the PRAOCA did not apply to invalidate its liens over the Pipeliners collateral. PRASA knew, or should have known, that the Court's adoption of Prestige's arguments would have an effect on the payments it made to EDB pursuant to the EDB Loan Agreement. Therefore, PRASA should have sought to intervene in the litigation surrounding the parties' cross motions for summary judgment. Instead, it waited until after the Court had issued its Opinion to awaken and file its motion to alter judgment. This, in violation of the well-established principle that "[a] motion for reconsideration does not provide a vehicle for a party to undue its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Fábrica de Muebles J.J. Álvarez, Inc. v. Inversiones Mendoza, Inc., ---F.3d----,

2012 WL 1972131, *4 (1st Cir. Jun. 4, 2012)(internal quotations omitted). As a result, the Court finds that PRASA's motion should be **STRICKEN** from the record.

The Court further believes that PRASA is overreacting to the Opinion. There, the Court carefully analyzed the facts and the governing law and determined that the equities of the case supported recognizing the priority of Prestige's liens over those of the EDB. The Court's holding should be circumscribed to the unique facts present in this case and in no way is meant to confer government contractors and their lenders with carte blanche to violate the provisions of the PRAOCA in the future. Moreover, if PRASA was really preoccupied by the prospect of facing liability due to Prestige's noncompliance with the PRAOCA, it would have taken a more aggressive stance in this litigation. For instance, at the outset of this case PRASA could have filed a motion to dismiss seeking refuge under PRAOCA, or it could have at least opposed Prestige's motion for summary judgment. Instead, it took a "passive role" and decided to remain in this case as a defendant.[3] However, despite its belated protestations, it is still not in the dangerous position of having to pay the same claim twice, as it has consigned the relevant funds in the state court.[4] In the end, all that this case requires is for Prestige to take the Opinion issued by the Court to the state court where PRASA's interpleader action is pending and seek payment from the consigned funds, according to the priority its liens enjoy under the UCC-PR. After the respective payments are made in due course, PRASA's role in this dispute

---

[3] When the Court stated in its Opinion that "PRASA is not obligated to make payments directly to Prestige extrajudicially" it only meant so under the particular circumstances of this case, given PRASA's acquiescence towards remaining here as a defendant. The fact that the Court validated the sale of the PRASA account receivables to Prestige does not mean this Court will support fastening liability on PRASA if on future occasions its contractors fail to comply with the PRAOCA. However, since PRASA chose to remain in this case, theoretically the Court could order it to make payments directly to Prestige according to the invoices due to Pipeliners. See also Arraiza v. Reyes, 70 D.P.R. 614 (1949).

[4] And apparently it never was, as under the P&S Agreement it was Pipeliners who collected the payments from PRASA and then forwarded them to Prestige. See Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir. 1959), cert. denied 362 U.S. 962 (1960)(When the government has paid or honored a claim, or no longer has any vital interest, the assignment is good between the parties or their successors in interest in spite of the fact that the government was not given notice of the assignment as required by the Federal Assignment of Claims Act).

should be at an end.

### III. CONCLUSION

For the reasons elucidated above, co-defendant EDB's motion to alter judgment (Docket No. 86) is **DENIED**. Co-defendant PRASA's motion to alter judgment (Docket No. 87) is hereby **STRICKEN** from the record.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, June 28, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**